PHILLIP A. TALBERT
Acting United States Attorney
MATTHEW D. SEGAL
Assistant United States Attorney
ERIN S. MELLEN
ANDREA A. KAFKA
Trial Attorneys, Department of Justice, Tax Division
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES TINGLER, ET AL.,<br><br>Defendants. | CASE NO. 2:13-CR-217 KJM<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>DATE: December 7, 2016<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I. INTRODUCTION

The United States of America, by and through its attorneys, respectfully submits this memorandum setting forth the Government's position with respect to the sentencing of defendant Charles Tingler ("defendant C. Tingler"). As outlined below, the Court should impose a sentence of 17 months imprisonment, to be followed by two years of supervised release, and restitution in the amount of $363,843.39 plus interest, joint and several with his wife and co-defendant, Victoria Tingler.

## II. PROCEDURAL HISTORY

On August 15, 2013, the grand jury returned a superseding indictment as to defendant C. Tingler for: (1) one count of filing false claims (count 35), in violation of 18 U.S.C. § 287; (2) three counts of

filing false liens (counts 43, 44, 45), in violation of 18 U.S.C. § 1521; (3) one count of conspiracy to defraud the United States (count 46), in violation of 18 U.S.C. § 371; and (4) three counts of unauthorized use of a Social Security number (counts 54, 55, 56), in violation of 42 U.S.C. § 408(a)(8). (Dkt. 43). The superseding indictment alleged that on or about August 21, 2008, defendant C. Tingler and co-defendant Victoria Tingler signed and filed with the Internal Revenue Service ("IRS"), a Form 1040X, Amended United States Individual Income Tax Return, for the year ending December 31, 2007, knowing that said return was false, fictitious, and fraudulent with respect to a material matter and made a fraudulent claim to the United States. Specifically, on August 21, 2008, defendant C. Tingler and co-defendant Victoria Tingler submitted to the IRS a joint form 1040X from the Eastern District of California, falsely claiming a refund in the amount of $358,415.00. On May 6, 2015, defendant C. Tingler pleaded guilty to count 35 of the superseding indictment – filing a false claim in violation of 18 U.S.C. § 287. (Dkt. 75). On August 25, 2015, the United States Probation Office submitted the Final Presentence Investigation Report ("PSR"). (Dkt. 94).

## III. STATEMENT OF FACTS

### A. False Claims Against the United States

On August 21, 2008, defendant C. Tingler and co-defendant Victoria Tingler submitted to the IRS a joint form 1040X from the Eastern District of California, falsely claiming a refund in the amount of $358,415.00. The false refund amount was purportedly based on fictitious interest income listed on line 8a of the return in the amount of $506,052.00, and fictitious federal income tax withholdings listed on line 64 of the return in the amount of $508,835.00. Defendant C. Tingler and co-defendant Victoria Tingler filed the amended return knowing that they did not receive $506,052.00 worth of interest income from the sources listed on Schedule B of the tax return and knowing that they did not have $508,835.00 worth of federal income taxes withheld by the sources listed on Schedule B. In fact, the twenty (20)

entities listed on Schedule B of the Tinglers' amended return were actually creditors to which defendant C. Tingler and co-defendant Victoria Tingler owed or paid money.

The fraudulent tax refund claim filed by defendant C. Tingler and co-defendant Victoria Tingler was consistent with a bogus theory that the federal government maintains secret accounts for U.S. citizens and that taxpayers can gain access to their account by issuing 1099-OID (Original Issue Discount) forms to the IRS. Under this bogus theory, the taxpayer first files a false information return, such as a 1099-OID, to justify a false refund claim on a corresponding tax return. In this case, on or about November 24, 2008, the IRS issued the fraudulent tax refund, in the amount of $363,843.39, to defendant C. Tingler and co-defendant Victoria Tingler.

On November 24, 2008, the same day they were issued the bogus refund check from the IRS, defendant C. Tingler and co-defendant Victoria Tingler opened a checking account with El Dorado Savings Bank in Placerville, California, account number 413004805. Also on November 24, 2008, defendant C. Tingler and co-defendant Victoria Tingler deposited $263,843.39 into said checking account. From November 24, 2008 through December 24, 2008, defendant C. Tingler and co-defendant Victoria Tingler withdrew $251,056.37 from that checking account.

On November 24, 2008, defendant C. Tingler and co-defendant Victoria Tingler opened a certificate of deposit (CD) account with El Dorado Savings Bank in Placerville, California, account number 41700649. Also on November 24, 2008, defendant C. Tingler and co-defendant Victoria Tingler deposited $100,000.00 into said CD account. On February 4, 2009, just days after a search warrant was executed at co-defendant Teresa Marty's place of business, Advanced Financial Services, defendant C. Tingler and co-defendant Victoria Tingler closed the CD account and withdrew its entire contents, the original $100,000.00, and $549.59 of interest that had accrued. Additionally, some of the funds from the bogus refund check were given by the Tinglers to their daughter.

### B. False Liens, Conspiracy and Unauthorized Use of Social Security Numbers

On or about March 2009, the IRS assessed defendant C. Tingler and co-defendant Victoria Tingler with a tax due and owing in the amount of $363,843.39 for the tax year ending December 31, 2007. On March 16, 2009, IRS revenue officer D.H.P. ("DHP") was assigned to collect the tax due and owing from defendant C. Tingler and co-defendant Victoria Tingler for the tax year 2007. DHP, as part of his official duties, processed various documents against defendant C. Tingler and co-defendant Victoria Tingler, including a notice of jeopardy levy, a notice of federal tax lien filing, and a final notice of notice of intent to levy, on April 2, 2009, May 19, 2009, and October 8, 2009, respectively.

On June 30, 2009, July 31, 2009, September 9, 2009, September 22, 2009, and October 12, 2009, defendant C. Tingler and co-defendant Victoria Tingler signed and caused to be sent to DHP correspondence in which among other things, they alleged false damages against DHP, claiming he owed them $6,000,000.00, and demanding payment. Each of these five pieces of correspondence sent to DHP by defendant C. Tingler and co-defendant Victoria Tingler was notarized by co-defendant Rebecca Bandera-Marty.

On or about October 2009, co-defendant Pamela Ann Harris contacted Credit Bureau Associates ("CBA"), a debt collection agency, to inquire about their collection services. On or about November 2, 2009, co-defendants Teresa Marty, Pamela Harris, and defendant C. Tingler signed a fictitious private registered offset and discharge bond with a face value of $3,000,000 and caused it to be mailed to then United States Secretary of the Treasury, Timothy F. Geithner. They signed the bond as principal, witness and surety, respectively. On or about November 16, 2009, co-defendant Teresa Marty entered into a contract with CBA for the collection of debts.

On or about November 30, 2009, and January 25, 2010, defendant C. Tingler filed a total of three UCC Financing Statements (filing nos. 09-72155185, 10-7220758113 and 10-7220759629) naming DHP as a debtor and Charles John Tingler as the secured party. The UCC Financing Statements listed DHP's home address. Attached to each of the UCC Financing Statements were Notices of Claim of

Maritime Lien, listing false claims against DHP in the amounts of $6,000,000, $5,500,000, and $500,000, respectively, and the liens listed DHP's social security number. The UCC Financing Statements were exactly identical to UCC Financing Statements filed against DHP by co-defendant Teresa Marty. The Maritime Liens were strikingly similar to liens filed against DHP by defendant C. Tingler's wife, co-defendant Victoria Tingler, on January 25, 2010.

UCC Financing Statements can be submitted in person, or filed online. The fee for processing and submitting a UCC Financing Statement is $5.00. By filing the UCC Financing Statements with the California Secretary of State, the "secured party" creates a public record and gets a lien against the "debtor's" personal property. The liens filed by defendant C. Tingler were filed by an email address and with a credit card that belonged to co-defendant Teresa Marty.

DHP had no idea how defendant C. Tingler retrieved his home address or his personal social security number. DHP had never dealt with defendant C. Tingler in a personal capacity. The liens filed by defendant C. Tingler were not valid as DHP did not owe any debt to defendant C. Tingler.

The false liens defendant C. Tingler filed against DHP listed DHP as a debtor and contained his Social Security number and his personal home address. The liens were filed by defendant C. Tingler as retaliation for acts performed by DHP in his position as an employee of the United States, as part of his official duties, under his authority as a revenue officer with the IRS. The UCC Financing Statements were specifically designed to cause substantial interference with the enforcement of the laws of the United States pertaining to the internal revenue and to molest, interrupt, hinder, intimidate or impede an employee of the United States in good faith performance of his official duties.

On or about January 26, 2010, co-defendant Pamela Harris provided CBA with a worksheet requesting that CBA collect a debt of $500,000 from DHP and provided CBA with DHP's home address, Social Security number and telephone number. On or about February 15, 2010, co-defendant Pamela Harris sent CBA a letter in which she forwarded the June 30, 2009, letter that defendant C.

Tingler had sent to DHP and advised that DHP was "sent 3 notices prior to the lien being done." On or about February 18, 2010, co-defendant Pamela Harris sent CBA a letter in which she forwarded copies of the July 31, 2009, the August 25, 2009, and the September 25, 2009 letters that defendant C. Tingler had sent to DHP.

## IV. COMPUTATION OF THE ADVISORY GUIDELINES RANGE

The first step in determining the defendant's sentence is to correctly calculate the applicable sentencing range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the "starting point and the initial benchmark." *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (*quoting Gall v. United States*, 552 U.S. 38, 49 (2007)). A correct calculation under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is "the starting point and the initial benchmark . . . to be kept in mind throughout the process." *United States v. Vargem*, 747 F.3d 724, 728 (9th Cir. 2014) (*quoting United Stets v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)).

### A. The Applicable Guidelines[1]

The PSR recommends the application of Section 2B1.1of the Guidelines. The government prefers the use of Section 2T1.1 of the Guidelines in tax cases, but here the use of Section 2B1.1 results in the same result as the calculations under Section 2T1.1. *See* U.S.S.G. §2B1.1. The applicable Guidelines Manual is the November 1, 2015 edition.

### B. Base Offense Level

After determining the applicable section of the Guidelines, the Court must calculate the defendant's base offense level. In calculating the offense level, U.S.S.G. §2B1.1(a)(2) provides that an

[1] It is worth noting that in the final PSR for co-defendant Victoria Tingler, Section 2T1.1 of the Guidelines was recommended, rather than 2B1.1, as in her draft PSR (*see* Dkt. 141 ¶ 19). However, using the tax loss figure of $358,843.39, whether Section 2B1.1 or 2T1.1 is used, the resulting base offense level is the same.

offense involving false claims against the United States carries a statutory maximum term of five years imprisonment, and a base offense level of 6.

Section 2B1.1(b) lists specific offense characteristics. The loss in this case is $363,843.39, resulting in an increase of 12 levels. U.S.S.G. §2B1.1(b)(1)(G). The PSR recommends, and the government agrees that this is appropriate, resulting in a level of 18.

**C. Adjustments to the Base Offense Level**

Having calculated the base offense level, the Court should proceed to determine whether that offense level should be adjusted, up or down, based on additional factors. The PSR recommends, and the government agrees, that an enhancement of two levels under U.S.S.G. §3C1.1, for obstruction of justice, applies. As discussed above, defendant C. Tingler filed false liens against DHP in the amounts of $6,000,000.00, $5,500,000.00, and $550,000.00 and tried to collect on those false liens. Defendant C. Tingler also unlawfully used DHP's social security number in filing the three liens against him. This is straightforward application of this enhancement. *See Id.* cmt. 4 ("The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies . . . (C) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding . . . ."); *see also United States v. Neal*, 776 F.3d 645, 653-55 (9th Cir. 2015). This brings the resulting level to 20.

The PSR also recommends, and the government agrees that a downward departure of two levels for acceptance of responsibility is appropriate in this case. U.S.S.G. §3E1.1(a). Finally, the PSR recommends and the government agrees that defendant C. Tingler's sentence should be further reduced by one level because defendant C. Tingler notified the government of his intention to plea several months in advance of the trial date. U.S.S.G §3E1.1(b).

**D. Criminal History**

The final step in determining a Guidelines range is to determine the defendant's criminal history category. The PSR determined, and the government agrees, that defendant C. Tingler falls within Criminal History Category I. *See* PSR ¶¶ 34-36 (Dkt. 94).

**E. Defendant Tingler's Advisory Guidelines Range**[2]

Using U.S.S.G. §2B1.1, the Government calculates the advisory Guidelines range as follows:

| | |
|---|---|
| Base Offense Level = | 6 |
| Specific Offense Characteristics: | +12 |
| Obstruction of Justice Enhancement = | +2 |
| Acceptance of Responsibility = | -2 |
| Timely Entering a Plea = | -1 |
| **Total Offense Level =** | **17** |

Based on a total offense level of seventeen (17), and a Criminal History Category I, defendant C. Tingler's advisory Guidelines range is 24 to 30 months incarceration, U.S.S.G. Sentencing Table, a fine of $15,000 to $150,000, *Id.* § 5E1.2(c)(3), and a term of supervised release of at least one year but not more than three years. 18 U.S.C. § 3583(b)(2); U.S.S.G. §5D1.2(a)(2). The government recommends that defendant C. Tingler be sentenced at the low range of the guidelines, so 24 months.

**F. Downward Departure Pursuant to U.S.S.G §5K1.1**

Defendant C. Tingler intended to cooperate and be a witness for the government had this case proceeded to trial. His testimony would have been useful against all of his co-defendants and as such

[2] As noted *infra*, the Guidelines calculation under U.S.S.G. §2T1.1 would result in the same offense level:

| | |
|---|---|
| Base Offense Level = | 18 |
| Obstruction of Justice Enhancement = | +2 |
| Acceptance of Responsibility = | -2 |
| Timely Entering a Plea = | -1 |
| **Total Offense Level =** | **17** |

the government recommends a 30% reduction in his sentence, results in a recommendation of a term of 17 months incarceration, followed by a two-year term of supervised release.

## V. SECTION 3553(A) FACTORS

Following a calculation of the applicable Guidelines range, the Court must consider the application of the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (a district court should impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, etc.). The Court should consider each of the § 3553(a) factors, explain the chosen sentence, and explain any deviation from the Guidelines range. *United States v. Treadwell*, 593 F.3d 990, 1009 (9th Cir. 2010). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) the need to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
(3) the kinds of sentences available;

18 U.S.C. § 3553(a). Additionally, the Court must consider the range set forth by the Guidelines, any pertinent policy statements by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. *Id.* A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that a sentence of twenty-four (24) months is appropriate.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

As discussed above defendant C. Tingler filed a false claim against the United States for a fraudulent tax refund of $363,843.39. When he received the bogus refund, defendant C. Tingler deposited the money into different accounts in an attempt to hide it from authorities. In the days

following the execution of the search warrant at co-defendant Teresa Marty's place of business, defendant C. Tingler promptly removed the $100,000 from the CD account he had placed it in. He also gave a portion to his daughter. Once he was assessed by the IRS, and a revenue officer, DHP, was assigned to his case, defendant C. Tingler took steps to thwart DHP's efforts in collecting the fraudulent refund. Defendant C. Tingler filed false liens against DHP, demanding payment of millions of dollars. These liens listed DHP's home address and his Social Security number, and were filed publically. Despite knowing that DHP did not owe him any money, defendant C. Tingler took it upon himself to work with his co-defendants, Teresa Marty and Pamela Harris to hire a collection agency in an attempt to collect on the bogus liens. When asked why he sent the liens, he explained that it was to keep the IRS from coming to his door and from attempting to reclaim the money from his daughter. Defendant C. Tingler pleaded guilty, but his actions show that he was willing to go to great lengths to thwart the government and its agents from performing legal duties, and took the additional steps of attempting to obstruct justice both in hiding his refund, and also by retaliating against DHP.

### B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Promote Deterrence, and Protect the Public from Further Crimes of the Defendant.

The prosecution of tax offenses serves a necessary function in the effective governance of the United States:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. § 2T1, introductory cmt.[3] The circuit courts regularly and consistently recognize the importance of general deterrence in these cases. *See, e.g., United States v. Hoskins*, 654 F.3d 1086,

[3] While defendant C. Tingler is being sentenced pursuant to U.S.S.G. §2B1, and not §2T1, he

1103 (10th Cir. 2011) (Briscoe, C.J., concurring in part and dissenting in part) (emphasizing importance of deterrence in sentencing for tax offenses); *United States v. Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system" and "[c]riminal tax prosecutions serve to punish the violator and promote respect for the tax laws."); *United States v. Burgos*, 276 F.3d 1284, 1290 (11th Cir. 2001) ("[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence").

General deterrence is made all the more critical in this case because the defendant engaged in retaliatory behavior against the revenue officer assigned to his case, and in doing so he impaired the lawful functions of the government in an attempt to obstruct justice.

The investigation and prosecution of this case took several years and thousands of hours of government time. This is to say nothing of the time taken by government employees in handling the false liens publically filed against them, listing their home address and social security numbers. The resources the government spends in tax cases is one reason to give a significant sentence of imprisonment. Specific deterrence is not as critical here, because defendant C. Tingler has shown that he accepts responsibility for his actions.

**C. The Need to Avoid Unwarranted Sentencing Disparities**

Congress enacted the Sentencing Reform Act—the act that led to the creation of the Sentencing Guidelines—in 1984. One of the principal purposes in establishing the Sentencing Guidelines was to create "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar criminal offenders." U.S.S.G. Ch1., Pt.A, p. 2. Thus one way to ensure avoiding unwarranted sentencing disparities is to sentence within the Guidelines range. This was particularly true for tax cases where "[u]nder pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences

---

committed tax fraud by submitting a false federal income tax return to the IRS requesting a refund of $363,843.39.

that required them to serve an average prison term of twelve months." *Id.* § 2T1.1 cmt. background. Accordingly, the tax section of the Guidelines "is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length. As a result, the number of purely probationary sentences will be reduced." *Id.* Thus one way to ensure avoiding unwarranted sentencing disparities is to sentence within the Guidelines range.

A number of clients of Marty and Advanced Financial Services have been prosecuted throughout the country for fraudulent returns during this scheme. The following table shows the sentences those clients received:

| **Client** | **District** | **Charge** | **Status** | **Sentence** |
|---|---|---|---|---|
| Jon Carlson | Arizona (12-cr-1113) | 7206(1) | Pleaded Guilty | Pending |
| Paul Wrubleski | South Florida (12cr60297) | 7212(a), 287 | Convicted | 55 Months |
| Teresa Dietzenbach | Colorado (1:13cr222) | 287 | Pleaded guilty | 60 months probation |
| Mark Ellis | Oregon (6:13cr81) | 287, 1521 | Pleaded guilty | 12 Months + 1 day |
| Cheryl Hesser | Mid Florida (2:11cr85) | 287 | Pleaded Guilty | 6 months |
| Peter Hesser | Mid Florida (2:11cr83) | 287 | Convicted | 36 Months |
| Miles Julison | Oregon (3:11-cr-378) | 287 | Convicted | 48 Months |
| Joshua Simonson | West Missouri (4-11cr224) | 1957 | Convicted | 120 Months |
| Kristen Simonson | West Missouri (4-11cr224) | 286, 287 | Convicted | 87 Months |
| Timothy Thomas | North Georgia (1:12cr188) | 371, 287 | Pleaded guilty | 24 Months |
| Mary Beth Thomas | North Georgia (1:12CR188) | 371, 287 | Pleaded guilty | 10 Months |
| Robert Robertston | Eastern California (13-cr-311) | 287, 1521, 7212(a) | Dismissed | |
| Esther Robertston | Eastern California (13-cr-311) | 187, 1521, 7212(a) | Pleaded guilty | Pending |
| Elaine Gibney | Western Washington (3:13-cr-5568) | 287, 514(1)(2) | Pleaded guilty | 60 Months |
| Peter Gibney | Western Washington (3:13-cr-5568) | 287, 514(1)(2) | Pleaded guilty | 12 Months + 1 day |
| Stephen Thomas | North Georgia (1:12cr107) | 371, 7203 | Convicted | 60 Months |
| Patricia Thomas | North Georgia (1:12cr107) | 371, 3203 | Convicted | 51 Months |

| | | | | |
|---|---|---|---|---|
| Michael Sahlgren | North Georgia (1:11cr170) | 7203 | Pleaded guilty | 6 Months |
| David Clum | South Florida (11cr60273) | 286, 287 | Convicted | 293 Months |
| Sharon Angulo | South Florida (14-cr-20592) | 371, 7206(2), 7212(a), 7206(1) | Convicted | 60 Months |

The recommended Guideline range for C. Tingler falls squarely within the sentences of other clients of the scheme. The sentence of 24 months is appropriate since C. Tingler not only filed the false return, but also filed the retaliatory liens, and attempted to collect on one of them.

**D. No Reason to Impose a Non-Guidelines Sentence**

None of the factors in section 3553(a) warrants imposing a sentence outside of the recommended Guidelines range, and to the extent any factors are identified do not warrant a downward departure beyond the Guidelines minimum of 24 months.

## VI. SPECIAL CONDITIONS OF RELEASE

The government seeks to have the Court require defendant C. Tingler to timely file and pay his federal and state income tax returns going forward.

## VII. RESTITUTION

Defendant C. Tingler agrees to pay restitution to the Internal Revenue Service that results from his fraudulent conduct. The government calculates the restitution owed as follows:

| Tax Year | Amount Refunded by IRS | Amount to be Credited to Tax | Interest Under Title 26 Due Through 12/7/2016 | **TOTAL** |
|---|---|---|---|---|
| 2007 | $363,843.39 | $23,153.10 | $109,597.76 | **$450,288.05** |

Restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the schedule of payments is a schedule of the minimum payment due, and the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as

part of the sentence or as a condition of supervised release or probation, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. §6201(a)(4). The defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. §6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment, including by levy and destraint under 26 U.S.C. §6331. Interest on the restitution-based assessment will accrue under 26 U.S.C. §§ 6601 and 6621 from the last date prescribed for payment of the liability that is the subject of the restitution order to the date that the IRS receives payment. The government asserts that the defendant shall sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that he agreed to pay as restitution pursuant to the plea agreement. The government also requests the defendant sign IRS Form 8821, "Tax Information Authorization." The government asserts that the defendant cannot file any claim for refund of taxes, or penalties represented by an amount of restitution paid pursuant to the plea agreement. The government asserts that defendant will receive proper credit, consistent with the calculations above, for the payments made. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time period(s) covered by this agreement or any other time period. The government asserts that the defendant will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period(s) covered by this agreement or for any other time period. Finally, the government asserts that the Defendant is not entitled to credit with the IRS for any amount sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to his particular liability.

## VIII. RECOMMENDATION / CONCLUSION

For the foregoing reasons, this Court should sentence defendant Charles Tingler to seventeen (17) months imprisonment, to be followed by two years of supervised release, and restitution of $363,843.39, joint and several with his wife and co-defendant, Victoria Tingler to be paid to the government.

Respectfully submitted,

Dated: November 30, 2016

PHILLIP A. TALBERT
Acting United States Attorney

By: */s/ ANDREA A. KAFKA*
ANDREA A. KAFKA
Trial Attorney
United States Department of
Justice – Tax Division